UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>GARY KOTSIRIS. ) | 89 CR 39<br><br>Hon. Charles R. Norgle |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Defendant Gary Kotsiris' Motion to Expunge. For the following reasons, the Motion is denied.

### I. BACKGROUND

In May 1987, a federal grand jury indicted Defendant Gary Kotsiris ("Kotsiris") along with fifteen co-defendants in connection with their activities at the Chicago area offices of the First Commodity Corporation of Boston ("First Commodity"), a registered futures commission merchant. First Commodity employed Defendants as either salesmen, sales managers, or branch managers. Kotsiris was a salesman. The indictment charged that Defendants, including Kotsiris, devised and participated in a scheme to defraud clients by making false representations and promises concerning the potential benefits of trading in commodities through First Commodity. Defendants, including Kotsiris, misled potential customers by representing that the risks involved with commodities trading were minimal, when the truth was that these investments were high-risk, and that the customers were likely to lose money. Defendants fraudulently induced over 2,600 customers to invest in the commodity futures market with First Commodity. United States v. Biesiadecki, 933 F.2d 539, 540 (7th Cir. 1991). Approximately ninety percent of these

1

individuals lost money. Id. at 542. The indictment charged Defendants with mail and wire fraud, racketeering, and conspiracy to commit racketeering. Id. at 540.

Fifteen Defendants, including Kotsiris, pled guilty prior to trial. Id. The remaining Defendant, Jan Biesiadecki, elected to exercise his right to trial by jury, and was found guilty on all counts. Id. The Honorable District Judge Rovner (now a Seventh Circuit Judge) sentenced Biesiadecki to three months imprisonment, five years probation, and restitution. Id. The Seventh Circuit affirmed. Id.

In Kotsiris' Plea Agreement, signed and dated August 29, 1989, he agreed to enter pleas of guilty to two counts of the indictment, and admitted to, *inter alia*, the following facts. He was employed as a salesman by First Commodity branch offices in Chicago and Oakbrook, Illinois from June 1983 until March 1985. While employed by First Commodity, he participated with other salesmen and managers in a scheme to defraud potential investors and customers of First Commodity by means of false and misleading representations. Specifically, Kotsiris admitted that in soliciting potential clients for First Commodity, he falsely represented that: First Commodity's customers generally received favorable returns on their investments, when he was aware that most customers in fact lost money; he would pull investors out of the commodity market if it started to decline, when in fact he was not able to preclude losses by customers; and he worked many hours analyzing the market to find profitable investments for First Commodity's clients, when in fact he spent the vast majority of his time on the telephone soliciting new customers.

Kotsiris ultimately pled guilty to, and was convicted of, mail fraud and conspiracy to participate in a scheme of racketeering. As a part of his Plea Agreement, Kotsiris agreed to

cooperate with the government. On January 30, 1990, Judge Rovner sentenced Kotsiris to five years probation, and $25,000 in restitution. He did not appeal. The court has reviewed Kotsiris' probation reports, and there is no indication that he failed to comply with the conditions of his probation.

On March 25, 2008, Kotsiris filed the instant Motion to Expunge. In support of this Motion, Kotsiris asserts that he has not committed any other criminal offenses since his conviction, and that he may face adverse employment consequences in the future as a result of this conviction. The Motion is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

#### 1. *Expungement*

A motion to expunge a criminal conviction differs substantially from a motion to vacate or set aside a conviction. "[W]hen a defendant moves to expunge records, she asks that the court destroy or seal the records of the fact of the defendant's conviction and not [vacate or set aside] the conviction itself." United States v. Crowell, 374 F.3d 790, 792 (9th Cir. 2004). Without more, expungement of a criminal conviction "does not alter the legality of the previous conviction and does not signify that the defendant was innocent of the crime to which he pleaded guilty." Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 115 (1983). In other words, an individual who files a motion to expunge seeks "the judicial editing of history." Rogers v. Slaughter, 469 F.2d 1084, 1085 (5th Cir. 1972). The process of editing history, the court notes, consumes a tremendous amount of judicial resources. In adjudicating this motion, the court was

required to search extensively through boxes of archived case documents and probation reports, simply to verify Kotsiris' factual assertions regarding his conviction, sentence, and probation.

## 2. *Jurisdiction*

Before addressing merits of this Motion, the court must be assured that it has jurisdiction to proceed. The court notes initially that it has no general statutory power to expunge criminal records, Crowell, 374 F.3d at 793, although there are a few scattered and narrowly drawn exceptions. See, e.g., 18 U.S.C. § 3607(c) (providing that criminal records in certain drug possession cases may be expunged); 42 U.S.C. § 14132(d) (providing that DNA records maintained by the FBI may be expunged where a conviction is overturned).

It is axiomatic that "[f]ederal courts are courts of limited jurisdiction . . . possess[ing] only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994) (citations omitted). If this court has jurisdiction to expunge criminal records, it must therefore arise from its inherent powers. The Kokkonen decision, however, indicated that a federal court may only exercise its "ancillary jurisdiction" in two contexts: "(1) to permit disposition by a single court of claims that are . . . factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." Id. at 379-80.

Relying on Kokkonen, the First, Third, Eighth, and Ninth Circuits have held that district courts do not have "ancillary jurisdiction" to expunge records of criminal convictions. See United States v. Coloian, 480 F.3d 47, 52 (1st Cir. 2007); United States v. Dunegan, 251 F.3d 477, 480 (3d Cir. 2001); United States v. Meyer, 439 F.3d 855, 859-60 (8th Cir. 2006) ("In light

of the Supreme Court's instruction narrowing the scope of ancillary jurisdiction in [Kokkonen], we are convinced that a district court does not have ancillary jurisdiction to expunge a criminal record based solely on equitable grounds."); United States v. Sumner, 226 F.3d 1005, 1014 (9th Cir. 2000).

However, the Seventh Circuit has not so interpreted Kokkonen. "[D]istrict courts do have jurisdiction to expunge records maintained by the judicial branch." United States v. Flowers, 389 F.3d 737, 739 (7th Cir. 2004). The Second, Tenth, and D.C. Circuit have also concluded that district courts have ancillary jurisdiction to expunge. See United States v. Schnitzer, 567 F.2d 536, 539 (2d Cir. 1977); United States v. Linn, 513 F.2d 925, 927 (10th Cir. 1975); Livingston v. United States Dep't of Justice, 759 F.2d 74, 78 (D.C. Cir. 1985) ("It is well established . . . that courts have the inherent, equitable power to expunge arrest records."). This court, obviously bound by Seventh Circuit precedent, determines that it has jurisdiction to order judicial records of Kotsiris' criminal conviction expunged.[1]

### 3. *The Seventh Circuit's Balancing Test*

The Seventh Circuit has articulated a balancing test district courts must use to determine whether to order expungement of criminal records held by the judicial branch. "'[I]f the dangers of unwarranted adverse consequences to the individual outweigh the public interest in maintenance of the records, then expungement is appropriate.'" Flowers, 389 F.3d at 739 (quoting Janik, 10 F.3d at 472). The Flowers court emphasized that "expungement is an

---

[1] The court does not have jurisdiction to expunge records held by the executive branch. United States v. Janik, 10 F.3d 470, 472 (7th Cir. 1993).

5

extraordinary remedy," and, as a result, "the balance very rarely tips in favor of expungement." Id.

The court recognizes that many individuals with criminal records face significant obstacles in finding employment. However, the Seventh Circuit has indicated that these are not the sort of "adverse consequences" that warrant expungement. "[I]f employment problems resulting from a criminal record were 'sufficient to outweigh the government's interest in maintaining criminal records, expunction would no longer be the narrow, extraordinary exception, but a generally available remedy.'" Id. at 739-40 (quoting United States v. Smith, 940 F.2d 395, 396 (9th Cir. 1991)). Congress, in its collective wisdom, could certainly make expungement of federal criminal records a "generally available remedy," but it has not yet chosen to do so.

## B. Kotsiris' Motion to Expunge

In Kotsiris' Motion to Expunge and his related briefs, he asserts that he may be fired from his position at a real property management firm due to background checks he fears will reveal his conviction. The court understands Kotsiris' anxiety regarding his employment, but the Seventh Circuit's position on expungement and adverse employment consequences is clear. Employment problems resulting from a criminal conviction are simply not enough to tip the scales in favor of the extraordinary remedy of expungement. Id. Kotsiris presents the court with "no more than a routine, valid criminal conviction with the usual attendant consequences." Id. at 740.

Moreover, Kotsiris does not indicate that he has actually been terminated from his position. See United States v. Joanes, No. 94 CR 45, slip op. at 4 (N.D. Ind. Aug. 10, 2007)

(ordering expungement when defendant showed actual adverse consequences). Kotsiris merely speculates that he may be fired at some point in the future.

> [Kotsiris] does not provide any evidence of the actual loss of employment opportunities. [He] merely says that [he] fears that if [his] records in this matter are not expunged, it will seriously hamper [his] ability to find employment in [his] field. That speculative consequence cannot outweigh the public interest in maintaining the accuracy of judicial records.

Flowers, 389 F.3d at 740. In sum, Kotsiris has simply not provided the court with a sufficiently compelling reason to order the "extraordinary remedy" of expunging his criminal record. His Motion to Expunge is therefore denied.

### III. CONCLUSION

For the foregoing reasons, Kotsiris' Motion to Expunge is denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

Dated: April 17, 2008